J-S46006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD SCOTT SENSIBAUGH | : | |
| | : | |
| Appellant | : | No. 1326 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 11, 2023
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002007-2021

BEFORE:  LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED: January 29, 2025**

Richard Scott Sensibaugh appeals from the judgment of sentence, imposed in the Court of Common Pleas of Blair County, following a stipulated bench trial after which Sensibaugh was found guilty of one count each of corruption of minors[1] and indecent exposure[2] two counts of unlawful contact with a minor—sexual abuse;[3] three counts each of rape of a child,[4] indecent assault—person unconscious,[5] indecent assault—person less than thirteen

---

[1] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[2] *Id.* at § 3127(a).

[3] *Id.* at § 6318(a)(5).

[4] *Id.* at § 3121(c).

[5] *Id.* at § 3126(a)(4).

years of age,[6] and counts of corruption of minors—sexual offense;[7] five counts each of involuntary deviate sexual intercourse with a child[8] and aggravated indecent assault of a child;[9] and fifteen counts each of photographing, videotaping, filming or depicting sexual acts of children[10] and possession of child pornography.[11]  After careful review, we affirm.[12]

Sensibaugh was charged in connection with two child victims, A.R. and A.S.  A majority of the evidence of the crimes was obtained as a result of the search of Sensibaugh's Samsung cellular phone.  One of the victims, A.R., is the daughter of Sensibaugh's on-again-off-again girlfriend of two years, A.D.[13] A.D. had babysat A.S. in the past.

_____

[6] *Id.* at § 3126(a).

[7] *Id.* at 6301(a)(1)(ii).

[8] *Id.* at § 3123(b).

[9] *Id.* at § 3125(b).

[10] *Id.* at § 6312(b)(1).

[11] *Id.* at § 6312(d).

[12] Sensibaugh was acquitted of one count of solicitation—involuntary deviate sexual intercourse with a child—and two counts of unlawful contact with a minor—sexual abuse.

[13] The criminal acts regarding A.R. were alleged to have occurred on or about November 28, 2020, when A.R. was five years old.  A.S. was also five years old at the time of the crimes.  The videos of the alleged acts concerning A.S. are dated March 31, 2021.  *See* N.T. Stipulated Trial, 6/1/23, at 7.

On April 2, 2021, A.D. called the police after viewing, on her iPhone in the Google pictures application, a video of Sensibaugh putting his penis in A.R.'s mouth while she was sleeping. **See** N.T. Suppression Hearing, 7/7/22, at 5, 9.[14] At the time A.D. viewed the video on the iPhone, Sensibaugh had taken A.D.'s car to shop at Walmart. **Id.** at 10. Upon his return from Walmart, A.D. confronted Sensibaugh, said she had seen the video, and told him that she had called the police. A.D. testified that Sensibaugh "fled the residence [on foot] as soon as [A.D.'s] ex-husband[, who is A.R.'s father,] showed up before the police." **Id.**[15]

A.D. also testified that Sensibaugh owned a Samsung cell phone that was in her Honda Elantra on the date she called the police about the sexual assault. The phone was part of a Metro mobile plan that Sensibaugh shared with A.D. **Id.** at 79. A.D. testified that she retrieved the Samsung phone from her vehicle and gave it to the investigating officers "because [she] did not want it in her possession." **Id.** at 12.

Trooper Eric Glunt of the Pennsylvania State Police testified that, in response to the report of a sexual assault, he was dispatched to the residence

---

[14] A.D. testified that Sensibaugh's son's uncle had given A.D. the iPhone and that she used it for one week, but that Sensibaugh used the phone most of the time. **Id.** at 6, 8, 17. A.D. testified that the phone was password-protected, but that Sensibaugh had given A.D. the password and all of his email and Facebook passwords. **Id.** at 9.

[15] Although A.D. testified that she told Sensibaugh that she had called both the police and A.R.'s father, Sensibaugh testified that he "was [not] aware that [A.R.'s father] was on the way." **Id.** at 10, 80.

Sensibaugh shared with A.D. During the course of Trooper Glunt's investigation, A.D. gave Trooper Glunt Sensibaugh's Samsung cell phone. *Id.* at 48. Trooper Glunt testified that he took the Samsung phone back to the barracks, "placed it into evidence to be secured," and did not look through the phone prior to it being placed into evidence. *Id.* The only information that Trooper Glunt knew about the Samsung cell phone at the time he placed it into evidence was that A.D. had told him "the Google application [on the iPhone that contained the inculpatory video of Sensibaugh and the child-victim was] also on [the Samsung phone] and the phones are synced together so [A.D.] believe[d] the video w[ould] also be on th[e Samsung] phone." *Id.* at 63. *See also id.* (Trooper Glunt testifying he had no idea what other information might be contained on Samsung phone when he took it from residence).

On April 22, 2021, Trooper Glunt executed an application for a search warrant and authorization for Sensibaugh's Samsung cellular smartphone, serial #R9AN70TYZ1J. The warrant sought "[a]ny and all content contained on [the] cellular telephone, including but not limited to call logs, calls received, calls dialed, missed calls, text messages sent, text messages received, recordings, pictures, video, range to tower data, deleted content, and information relating to the cellular telephone. To conduct a complete forensic analysis of cellular telephone." Application for Search Warrant and Authorization, 4/22/21. The affidavit of probable cause, attached to the

warrant application set forth the following facts and circumstances to support its issuance:

> Upon his arrival to the scene, [Trooper Glunt] interviewed [A.D.] [A.D.] related [that] the victim in this case is her five-year-old daughter, A[.]R[. (born July 2015]. A.D. related she has had an on and off relationship with [Sensibaugh] for approximately two years. [A.D.] was running errands with [Sensibaugh] earlier in the evening [w]hen Sensibaugh left the residence, A.D. went through the [iP]hone which belonged to her, but she gave it to him to use. She wanted to see if [Sensibaugh] had been seeing anyone else. A.D. came across a video of the victim [] on the phone. The video shows [Sensibaugh] placing his penis into the mouth of the victim [] as she was sleeping. T[rooper] Glunt asked A.D. how she knew it was [Sensibaugh] and she related the video took place in their residence, she recognized his underwear that he was wearing[,] and the birthmark on his penis. She confronted Sensibaugh when he returned to the residence. She asked him how many times he had touched her daughter and he replied just the one time. After the confrontation[,] Sensibaugh fled the residence and made threats to harm himself as the police were called. A.D. showed T[rooper] Glunt the video depicting the sexual act between her daughter and Sensibaugh. The video was stamped with the date of 11/28/20. At the time of this incident, [Sensibaugh] was 35 years of age with a birthdate of 08/01/85[,] and the victim was 5 years of age[.] The video was located in [Sensibaugh's] Google pictures application. A.D. then provided [to Trooper Glunt] the Samsung Cellular smartphone with serial #R9AN70TYZ1J[,] which she indicated belonged to Sensibaugh. She related [that] the Google application is also on that phone and the phones are synced together so she believes the video will also be on this phone.

Affidavit of Probable Cause, 8/2/21, at 1 (unnecessary capitalization omitted). The search warrant application was approved two days later. The search uncovered multiple videos and images in the trash bin (or storage folder) of both A.R. and A.S. being subjected to various sexual acts perpetrated by Sensibaugh. *See* N.T. Stipulated Bench Trial, 6/1/23, at 7, 24-25, 28, 35, 48.

Prior to trial, Sensibaugh filed an omnibus motion seeking to suppress evidence uncovered from A.D.'s iPhone and Sensibaugh's Samsung cell phone, as well as a statement Sensibaugh made to troopers after he was arrested. In the motion, Sensibaugh claimed that the search of his password-protected Samsung phone was illegal because the search warrant application was "overly broad [and] not particularized," the affidavit of probable cause "lacked the requisite probable cause necessary to justify a legal search," and the search "exceeded the scope of the [] warrant." Omnibus Pretrial Motion, 5/26/22, at ¶¶ 21-23.

On July 7, 2022, the court held a suppression hearing, at which A.D., Trooper Glunt, Trooper Todd Roby, and Sensibaugh testified. The trial court ultimately denied Sensibaugh's suppression motion, concluding, in relevant part, that Sensibaugh had voluntarily abandoned the Samsung phone and, thus, had no legitimate expectation of privacy in it.[16]

Following a stipulated bench trial, Sensibaugh was convicted of the above-stated offenses. Prior to sentencing, the court ordered a pre-sentence investigation report. Sensibaugh was ultimately deemed to be a Tier III

_____

[16] The court also concluded that: (1) a person of reasonable caution would believe that A.D. had the apparent authority to give Trooper Glunt consent to search the iPhone; and (2) Sensibaugh was properly advised of his **Miranda** warnings, had waived his rights, and, thus, his statement to the police was voluntary. On appeal, Sensibaugh has not challenged the propriety of the suppression court's denial of the motion with respect to the search of the iPhone or his statement given to the police.

Megan's Law offender, requiring him to be a lifetime registrant with the Pennsylvania State Police.

On October 11, 2023, the court sentenced Sensibaugh to an aggregate term of imprisonment of 67 to 134 years. Subsequent to sentencing, Sensibaugh's counsel, David J. Shrager, Esquire, filed a motion to withdraw because "[counsel] has not been retained to represent [Sensibaugh] for any post-sentencing matters." Motion to Withdraw as Counsel, 10/31/23, at 1. On November 7, 2023, the court denied counsel's motion, noting that "counsel has a duty to perfect an appeal" prior to seeking withdrawal. Order, 7/8/23.[17]

Attorney Schrager filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Sensibaugh raises the following issues for our consideration:

(1) Did the suppression court err when it determined [Sensibaugh] abandoned his privacy interest in his Samsung [c]ellular [p]hone, and the data stored therein, by leaving the password-protected phone in his then-girlfriend's vehicle, which he had just driven, and was parked outside of his residence?

(2) Did the suppression court err when it determined that the police did not need a warrant to access the password-

_____

[17] On January 4, 2024, attorney Schrager filed another motion to withdraw in this Court. On January 30, 2024, our Court granted counsel's motion to withdraw and remanded the case to the trial court to determine whether Sensibaugh was eligibility for court-appointed counsel and,, if ineligible, whether he intended to retain new counsel or proceed *pro se* following a **Grazier** hearing. **See** Per Curiam Order, 1/30/24, at 1-2. On February 5, 2024, the trial court entered an order appointing the Blair County Public Defender's Office to represent Sensibaugh after concluding that he lacked sufficient financial resources to hire counsel. **See** Order, 2/5/24. Sensibaugh is represented by Russell J. Montgomery, Esquire, on appeal.

protected data in [Sensibaugh's] Samsung [c]ellular [p]hone?

(3)    Did the suppression court err when it denied suppression of [Sensibaugh's] Samsung [c]ellular [p]hone and its contents?

(4)    Did the trial court abuse its discretion when it sentenced [Sensibaugh] to a period of incarceration of 67 years to 134 years, which amounts to a *de facto* life sentence?

Appellant's Brief, at vii (italics added).

"Our standard of review regarding a challenge to a trial court's suppression ruling is limited to determining whether the court's findings of fact are supported by the record and the legal conclusions drawn from those facts are correct." ***See Commonwealth v. Thomas***, [] 273 A.3d 1190, 1195 (Pa. Super. 2022). Where the Commonwealth has prevailed below, this Court may only consider the evidence of the prosecution and so much of the defense evidence as remains uncontradicted when read in the context of the record. ***See id***. It is the suppression court's sole province as fact-finder to pass on the credibility of witnesses and the weight to give their testimony. ***See id***. When the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions from those facts. ***See Commonwealth v. Williams***, 941 A.2d 14, 27 (Pa. Super. 2008) (en banc).

With regard to the court's determination to deny suppression of the contents of Sensibaugh's Samsung cell phone, the trial court analyzed whether Sensibaugh had abandoned the phone and, thus, lacked standing to contest the legality of the search. Specifically, the trial court stated:

- 8 -

In the case before us, on the date of incident, when [] A.D. discovered the video of [Sensibaugh] placing his penis in the mouth of her 5-year[-]old daughter, she testified that she called the police right away and also the father of her 5-year[-]old daughter. [Sensibaugh] had taken her car to Wal-Mart and when he returned, [] A.D. confronted him. She advised him that she had called both the police and the father of the 5-year[-]old victim, at which time [Sensibaugh] fled the residence. When [Sensibaugh] fled the residence, he left the Samsung cell phone in [A.D.'s] vehicle, a Hyundai Elantra. [] A.D. then retrieved this phone from her vehicle.

Thus, we specifically find by his actions, [Sensibaugh] voluntarily abandoned any legitimate expectation of privacy in the Samsung cell phone.

\* \* \*

We find [] A.D.'s testimony to be credible in all respects. Therefore, we specifically find that [Sensibaugh] voluntarily discarded, left behind[,] and/or otherwise relinquished his interest in the property in question (Samsung cell phone) so that he can no longer retain a reasonable expectation of privacy with regard to it at the time of the search. As a result of such voluntary abandonment, [Sensibaugh lacks] standing to complain of the search or seizure of the Samsung cell phone. **_See Commonwealth v. Shoatz_**, [366 A.2d 1216 (Pa. 1976)].

Trial Court Suppression Opinion, 11/2/22, at 6-8 (citations to record omitted).

One of the exceptions to the warrant requirement is abandonment; abandonment can occur quickly and deprives a party of the right to contest the search and seizure of abandoned items. **_See Commonwealth v. Ronald Byrd_**, 987 A.2d 786, 790-93 (Pa. Super. 2009). A defendant cannot establish a legitimate expectation of privacy when he has "meaningfully abdicated his control, ownership[,] or possessory interest. . . . [A]bandonment of a privacy interest is primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts." **_Commonwealth v. Dowds_**,

761 A.2d 1125, 1131 (Pa. 2000) (internal citations and footnote omitted). The test for abandonment focuses upon "whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy [in it]." *Id.* at 1131 n.7.

Sensibaugh asserts that the suppression court erred in denying his motion where he had a reasonable expectation of privacy in his phone that was at his residence, *see* Appellant's Brief, at xi, and that because "his phone was found at his residence by a non-law enforcement third-party," *id.* at 1, he retained a reasonable expectation of privacy in it. Moreover, Sensibaugh claims there were no exigent circumstances or safety concerns and that he did not intentionally leave the phone behind in A.D.'s car but had merely "forgotten it . . . amid . . . bringing groceries and other items from Walmart into his residence from the vehicle he had just parked in the driveway." *Id.* at 3-5.

Instantly, there is no question that Sensibaugh maintained a subjective expectation of privacy in his Samsung cell phone. However, "[t]he constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right[,] but on whether the expectation is reasonable in light of all the surrounding circumstances." *Commonwealth v. Viall*, 890 A.2d 419, 422 (Pa. Super. 2005).

Here, the trial court concluded that Sensibaugh abandoned the phone where he absconded from the residence knowing that the police were *en route*

to the house, leaving his cell phone—which contained multiple incriminating images and videos—in A.D.'s car, and where "the totality of these circumstances does not create a privacy expectation that society is prepared to recognize as reasonable." Trial Court Suppression Opinion, 11/2/22, at 8.

Contrary to Sensibaugh's argument in his appellate brief that he simply "forgot" his phone in the car when he was bringing in his Walmart haul, at the suppression hearing Sensibaugh testified that A.D. "took [the Samsung phone] out of [his] hands and was screaming at [him] at the front door" of the residence when he arrived home from Walmart. N.T. Suppression Hearing, 7/7/22, at 81. In fact, when asked on cross-examination whether A.D. was a liar because she testified that she retrieved his Samsung phone from her car, he answered in the affirmative. *Id.* Sensibaugh also testified that he did not take the phone back from A.D. when he fled the house and that he never returned to the house that day. *Id.*

It is well-established that:

An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Viall*, 890 A.2d at 422 (citations omitted).

As pointed out by the Commonwealth, "the societal interest in protecting a 5[-]year[-]old child and preserving direct digital evidence of the sexual abuse of that child that could easily be destroyed outweighs any legitimate expectation of privacy in the property [Sensibaugh] abandoned when he learned his crime had been discovered and the police were on the way." Commonwealth's Brief in Opposition to Defendant's Motion to Suppress, 10/19/22, at 7. **See also id.** at 10 (Sensibaugh "chose escape over encountering police; he traded his continued freedom for his Samsung phone, leaving it behind in the victim's car he recently used. . . . [By] relinquishing his Samsung phone[, Sensibaugh] abandoned his rights to it. He did not return while police were on the scene because, logically, he was attempting to evade the consequences of his actions that were recorded and documented on the very property for which he attempts to invoke protection.").

Instantly, we may infer Sensibaugh's intent to abandon the Samsung phone from the facts that he fled immediately from the residence after being confronted by A.D. and never returned to the house at any point before he was arrested the following day. Based on his voluntary abandonment of the phone, in light of the totality of the circumstances and a proper balancing of societal interests, we conclude that Sensibaugh no longer had a legitimate or

reasonable expectation of privacy in the phone.  Thus, we agree with the trial court that Sensibaugh has no standing to contest its seizure or search.[18]

_____

[18] Sensibaugh further claims that the contents of the phone should have been suppressed based on the fact that the warrant used to access his password-protected cellular phone data was "overbroad [and] general."  Appellant's Brief, at xi.

> It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched. . . .  The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad.  These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize.  This will result in the general "rummaging" banned by the [F]ourth [A]mendment.  A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation[.] . . .  An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

***Commonwealth v. Orie***, 88 A.3d 983, 1002-03 (Pa. Super. 2014) (citation omitted).  Even if we had concluded that Sensibaugh did not abandon the phone and, thus, had standing to challenge its search and seizure, we would still find he is not entitled to relief.

Instantly, Trooper Glunt testified that A.D. told him the iPhone and the Samsung phones were "synced" and that the Google application, on which she viewed the video of Sensibaugh sexually abusing the victim, was on both phones.  A common-sense reading of the warrant application leads to the conclusion that the police were searching for more evidence of child sexual abuse perpetrated by Sensibaugh.  The facts detailed by Trooper Glunt in the affidavit gave the magistrate sufficient facts to conclude that there was a fair probability that additional incriminating evidence would be secreted or saved on the phone's files, call logs, deleted content, or text messages.  Thus, we find no merit to this claim.

- 13 -

In his final claim, Sensibaugh asserts that the trial court abused its discretion when it essentially imposed a "*de facto* life sentence" of 67 to 137 years' incarceration.

The record reflects that Sensibaugh failed to file a post-trial motion raising his discretionary aspects of sentencing claim. Under such circumstances, the claim is waived on appeal for failure to invoke our appellate jurisdiction. **See Commonwealth v. Myers**, 324 A.3d 528, 535 (Pa. Super. 2024) (citation omitted) (prior to reaching merits of discretionary sentencing issue, appellant must properly preserved issue at sentencing or in motion to reconsider and modify sentence). Sensibaugh claims that a "lapse of assistance of counsel precipitated [by] an unorthodox series of events, starting with the sentencing court's failure to appoint appellate counsel for [him] immediately after sentencing was imposed" requires we review his claim on appeal. Appellant's Brief, at xv.

We note that counsel's obligation to represent the defendant, whether as retained or appointed counsel, remains until leave to withdraw is granted by the court. **Commonwealth v. Librizzi**, 810 A.2d 692, 693 (Pa. Super. 2002). Here, the trial court did not grant counsel's post-sentence request to withdraw; thus, counsel was still obligated to file any requested post-sentence motions to preserve any discretionary sentencing issue. Accordingly, due to this deficiency, we are precluded from reviewing the merits of Sensibaugh's discretionary sentencing claim. Thus, we affirm Sensibaugh's judgment of sentence, without prejudice to his right to raise any potential ineffectiveness

- 14 -

claim in a timely PCRA petition. **See Commonwealth v. Holmes**, 79 A.3d 562, 578 (Pa. 2013) (litigation of ineffectiveness claims generally not proper issue for direct appeal; ineffectiveness claims presumptively deferred for collateral attack under PCRA).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/29/2025